J-A19001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MARY ANN PANAWAY, INDIVIDUALLY, AND AS ADMINISTRATRIX OF THE ESTATE OF JOSEPH C. PANAWAY | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : | |
| v. | : : | No. 1728 MDA 2023 |
| TROPICANA ATLANTIC CITY CORPORATION, D/B/A TROPICANA CASINO AND RESORTS | : : : | |

Appeal from the Order Entered November 13, 2023
In the Court of Common Pleas of Luzerne County
Civil Division at No(s): 2019 11237

BEFORE: PANELLA, P.J.E., LANE, J., and STEVENS, P.J.E.*

JUDGMENT ORDER BY PANELLA, P.J.E.:    **FILED: SEPTEMBER 5, 2024**

Appellants, Joseph C. Panaway and Mary Ann Panaway, husband and wife, appeal from the Order entered by the Luzerne County Court of Common Pleas on November 13, 2023, which granted summary judgment in favor of Defendant, Tropicana Atlantic City Corp. d/b/a Tropicana Casino and Resorts, and dismissed the action initiated by Appellants. We affirm on the basis of the trial court's opinion.

_____

* Former Justice specially assigned to the Superior Court.

The trial court accurately summarized the factual and procedural history of the case. **See** Trial Court Opinion, 2/5/24, at 1-2. Therefore, a detailed recitation of the underlying facts is unnecessary.

The trial court considered Appellants' complaint, which was originally filed on February 18, 2020,[1] and raised claims of breach of contract (Count I), violation of the right to privacy (Count II), negligent infliction of emotional distress (Count III), and additional civil rights violations (Count IV), in reference to an incident which occurred during the early morning hours of September 10, 2017. In its February 5, 2024 opinion, the trial court has aptly reviewed Appellants' claims and disposed of the arguments on the merits. We have reviewed the certified record and the briefs, the relevant law, and the well-written opinion of the Honorable Richard M. Hughes, III. We have determined that the trial court's opinion comprehensively disposes of Appellants' issues on appeal, with appropriate references to the record, and without legal error. Therefore, we affirm on this basis. **See** Trial Court Opinion 2/5/24, at 3-11.

---

[1] The Appellants filed a number of amened complaints, the last being the Fourth Amended Complaint, filed on December 10, 2020.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/5/2024

MARY ANN PANAWAY, Individually, : IN THE COURT OF COMMON PLEAS
And as Administratrix of the Estate of : OF LUZERNE COUNTY
JOSEPH C. PANAWAY, :
:
Plaintiff :
: CIVIL ACTION – LAW
vs. :
:
TROPICANA ATLANTIC CITY CORP., : JURY TRIAL DEMANDED
d/b/a TROPICANA CASINO AND :
RESORTS, :
:
Defendant : No. 11237 of 2019

## OPINION

Before the Court was a Motion for Summary Judgment filed on June 13, 2023 by

Defendant, Tropicana Atlantic City Corporation (Tropicana). Oral Argument was held on August

16, 2023 and this Court granted Defendant's Motion with an Order dated November 13, 2023.

Plaintiffs now appeal that Order.


## BACKGROUND AND PROCEDURAL HISTORY

Mary Ann Panaway and Joseph C. Panaway initiated the above-captioned matter by writ

of summons on September 10, 2019, naming Tropicana as Defendant. A complaint was filed on

February 18, 2020 and multiple rounds of Preliminary Objections ensued. Plaintiffs' Fourth

Amended Complaint was filed on December 10, 2020 and is the operative complaint in this

matter. Mr. Panaway passed away during the course of the litigation, and the caption was

amended to name Plaintiffs as Mrs. Panaway in her own right, and as administratrix of Mr.

Panaway's estate (Plaintiffs). Discovery was conducted and Tropicana filed for summary

judgment on June 13, 2023.

This matter stems from a weekend stay in Atlantic City, New Jersey, where Plaintiffs stayed in a hotel room owned by the Defendant. They traveled to Atlantic City for a concert, and utilized a complimentary hotel room using perks accumulated from casino play. During their stay, an alleged theft on the casino floor prompted the New Jersey State Police to knock on Plaintiffs' hotel room door during an investigation. A non-party woman thought she had dropped her ring on the floor, and video surveillance showed Mrs. Panaway bending over and picking something up in the same vicinity. Tropicana used Mrs. Panaway's players club card information in order to identify her to the police. Plaintiffs allege mental suffering from their interaction with the police in the middle of the night.

As a preliminary matter, Plaintiffs alleged numerous causes of action in their Fourth Amended Complaint: 1.) Breach of Contract 2.) Violation of Right of Privacy 3.) Negligent Infliction of Emotional Distress and 4.) Civil Rights violation under 42 U.S.C. Section 1983. Defendant moved for summary judgment on all counts. Defendant sought dismissal of Plaintiffs' complaint based on the statute of limitations.[1] Likewise, they sought dismissal of the 1983 claim as a private actor. Plaintiffs only opposed the dismissal of their breach of contract claim in briefing and argument and, as such, this Court will address only the Breach of Contract claim in this opinion.

---

[1] The writ of summons was filed beyond two years from the date of the incident.

## DISCUSSION

This Court proceeds under the applicable summary judgment standard. A party may move for summary judgment "if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2(2). "In considering the merits of a motion for summary judgment, the record is viewed in the light most favorable to the non-moving party, and doubts as to the presence of a genuine issue of material fact are resolved against the moving party." *Wilson v. El-Daief*, 600 Pa. 161, 170 (2009) citing *Fine v. Checcio*, 582 Pa. 253 (2005).

A Breach of Contract claim requires demonstrating 1.) the existence of a contract between the plaintiff and defendant, including its essential terms 2.) a breach of a duty imposed by the contract and 3.) damages resulting from a breach of that duty. *Reeves v. Middletown Athletic Ass'n*, 866 A.2d 1115, (Pa.Super. 2004); *CoreStates Bank v. Cutillo*, 723 A.2d 1053 (Pa.Super. 1999).

*Formation & Breach*

Plaintiffs' statement of errors suggests this Court erred in the following ways regarding the existence of a contract: 1.) by dismissing the Breach of Contract claim notwithstanding the fact no written contract between the parties was discovered, 2.) by dismissing the Breach of Contract claim notwithstanding the fact the parties may contract orally, 3.) by dismissing the Breach of Contract claims where Defendant erroneously indicated that Plaintiffs' allegations do not purport the contract to be an oral contract, while Plaintiff contends that she is unaware of

whether a written contract exists, and 4,) by dismissing the Breach of Contract claim notwithstanding the fact no written contract (if one exists) was attached to the Complaint.

Plaintiffs appear to argue that since they are unaware whether a written contract exists, the claim should go forward. Discovery in this matter has concluded. Plaintiffs seem to be contending that the absence of evidence that a written contract exists constitutes a genuine dispute of material fact. However, that is not the case.

In responding to a Motion for Summary Judgment, "the adverse party may not rest upon the mere allegations or denials of the pleadings but must file a response within thirty days after service of the motion identifying (1) one or more issues of fact arising from evidence in the record controverting the evidence cited in support of the motion or from a challenge to the credibility of one or more witnesses testifying in support of the motion, or (2) evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." Pa.R.C.P. No. 1035.3(a).

No written contract was attached to the complaint, and no written contract was produced by the Defendant throughout discovery. Defendant moved for summary judgment, and the record does not contain a written contract. In fact, Plaintiffs' brief in opposition states "both the pleadings and discovery responses establish there is no written agreement." Plaintiffs' Brief in Opposition at 10. Despite the perplexing additions included in Plaintiffs' statement of errors, the only position they took through briefing and argument is that there was an Oral Contract established when Mrs. Panaway booked the hotel room over the phone.

## Formation of Contract

This Court did not base its dismissal on whether a contract was formed between the parties. The dispositive failures of the remaining elements of a Breach of Contract claim formed a clear basis for dismissal. In a light most favorable to Plaintiffs, there is enough on the record to establish that a contract was formed when Mrs. Panaway called the hotel and booked a room using a type of rewards system Tropicana uses to provide complimentary rooms to its patrons. However, even with the formation of a contract for a hotel room, the alleged breach is of an alleged term of the contract that is based on nothing more than unsubstantiated statements in Plaintiffs' brief in opposition.

## Breach

The alleged breach is Tropicana's use of Mrs. Panaway's players club card to identify her and her room number to the New Jersey State Police. In Plaintiffs' brief in opposition, they state that "The Tropicana made the promise (whether implicitly or expressly) to provide a room free from unnecessary, unwarranted and unlawful disturbances and/or intrusion into their private life." Id at 11. They also contend that Tropicana "was expected and required to provide the Panaways with a secure environment, free of baseless threats, interrogation, unsubstantiated accusations of criminal activity and emotional damage," as well as "refrain from publishing their personal information to the New Jersey State Police..." Id. While all of this is stated in their Brief in opposition, Plaintiffs have provided no evidence that such specific promises were terms of the contract. Refraining from providing information to the New Jersey State Police during an investigation cannot be said to be an implicit term of this particular contract.

"'In the absence of an express provision, the law will imply an agreement by the parties to a contract to do and perform those things that according to reason and justice they

should do in order to carry out the purpose for which the contract was made and to refrain from doing anything that would destroy or injure the other party's right to receive the fruits of the contract. Accordingly, a promise to do an act necessary to carry out the contract must be implied.'" *Daniel B. Van Campen Corp. v. Bldg. & Const. Trades Council of Philadelphia & Vicinity*, 195 A.2d 134, 136–37 (Pa. Super. 1963) citing 8 P.L.E., Contracts, Section 140.

Absent any evidence of an express term, reason and justice do not require such an implicit agreement in order to provide the Panaways with a hotel room. Likewise, disclosing information pursuant to a law enforcement investigation is not something that would destroy or injure the Panaways' right to receive the fruits of the contract. Notwithstanding the fact that the disclosure stemmed from an official intervention by a law enforcement agency, the law must not imply such a term when the Panaways continued to receive the fruits of the contract through that evening and the next.

Plaintiffs do not allege anywhere that they did not receive a hotel room as promised. The only breach alleged is that Mrs. Panaway's players club card was used to identify her and her room. The Panaways were woken up by the New Jersey State Police for under 10 minutes, and then continued their stay for the rest of the weekend. As discussed above, refraining from providing information to law enforcement was not a term of the contract. Therefore, no breach can be found.

*Damages*

Plaintiffs' statement of errors includes a statement that this Court erred in dismissing the Breach of Contract claim notwithstanding the fact Plaintiff made valid claims for economic damages, including payment for lodging to Defendant. Plaintiffs have presented no intelligible evidence of what economic damages were suffered and failed to make any argument as to economic damages in both their brief and oral argument. Only noneconomic damages were discussed.

To address this statement briefly; the alleged breach is the use of Mrs. Panaway's player card to identify her and her room number, resulting in the alleged mental suffering damages. Assuming economic damages stem from fees associated with the complimentary room, the record shows nothing to suggest that Mr. and Mrs. Panaway did not receive the benefit of their bargain. Mrs. Panaway's testimony shows that the couple stayed the weekend, including the night following the incident. Defendant's Exhibit D; Pages 39-40. There is no evidence presented to suggest how Plaintiffs suffered any economic harm or did not receive their room as expected.[2]

Plaintiffs cite *Rodgers v. Nationwide Mut. Ins. Co.* to bolster the argument they are entitled to damages for mental suffering under this breach of contract claim. Notably, they cite the language contained in the Restatement (Second) of Contracts Section 353:

"In actions for breach of contract, damages will not be given as compensation for mental suffering, except where the breach was wanton or reckless and caused bodily harm and where it was the wanton or reckless breach of a contract to render a performance of such

---

[2] "The plaintiff has the duty and burden to establish by proper testimony the damages which he claims to have sustained, and if he fails to meet this burden, the question of damages cannot be submitted to the jury." *Gordon v. Trovato*, 234 Pa. Super. 279, 282, 338 A.2d 653, 654 (1975) citing *Link v. Highway Express Lines, Inc.*, 282 A.2d 727 (Pa. 1971).

a character that the defendant had reason to know when the contract was made that the breach would cause mental suffering for reasons other than mere pecuniary loss."

*Rodgers v. Nationwide Mut. Ins. Co.*, 496 A.2d 811, 814–15 (Pa.Super.1985) citing Restatement (Second) of Contracts Section 353.

Numerous Pennsylvania Appellate decisions cite this portion of the Restatement.[3] It is notable, however, that the beginning of the analysis of this section in *Rodgers* reads as follows: "First, we note that this provision has not been adopted in Pennsylvania." *Id.* at 319. Indeed, this provision has not been expressly adopted. The Pennsylvania Supreme Court has held that "there can be no recovery for humiliation, disappointment, anxiety, or mental suffering, or emotional distress when unconnected with physical injury or physical impact." *Gefter v. Rosenthal*, 119 A.2d 250, 251 (Pa. 1956) citing *Potere v. City of Philadelphia*, 112 A.2d 100 (Pa. 1955); *Hess v. Philadelphia Transp. Co.*, 56 A.2d 89 (Pa. 1948); *Huston v. Borough of Freemansburg*, 61 A. 1022 (Pa. 1905). Of the caselaw citing to Section 353 of the Restatement of Contracts, the only recovery permitted by a Pennsylvania appellate Court appears to be *Speck v. Finegold*, a 'wrongful birth' case sounding in Tort.

In that case, appellants brought suit alleging damages, including emotional distress, regarding a negligent vasectomy and negligent termination of a pregnancy. The reason for these procedures, as contemplated by the parties, specifically included the fact that the Plaintiff husband had a genetic defect that was passed on to all children born to the couple.[4]

---

[3] See *D'Ambrosio v. Pennsylvania Nat. Cas. Ins. Co.*, 431 A.2d 966 (Pa. 1981); *Gallagher v. Upper Darby Tp.*, 539 A.2d 463 (Pa.Cmwlth. 1988); *Rittenhouse Regency Affiliates v. Passen*, 482 A.2d 1042 (Pa.Super. 1984)
[4] "According to the factual averments set forth in the complaints, Frank Speck, Jr. suffers from an inherited defect of the genes causing the disease neurofibromatosis. Mr. Speck and his wife, Dorothy, after having had two children who inherited the defect and its accompanying disease, decided not to have other children for genetic and economic reasons." *Speck v. Finegold* at 112–13.

The Supreme Court referenced Section 353 of the Restatement (Second) of Contracts after finding that claims for emotional distress were permitted to proceed to trial. "As to appellants' counts relating to their own pecuniary losses and emotional distress, I would, **on the peculiar facts presented**, permit the action to proceed to trial." *Speck v. Finegold*, 439 A.2d 110, 116 (Pa. 1981). However, other than "on the peculiar facts presented" in *Speck*, this Court could not any other. find precedent allowing such damages as cited in the Restatement.[5] *Id.* at 116. Accordingly, this Court has no reason to believe that, absent an express adoption of that Section, *Gefter* has lost authority in holding that emotional damages are not permitted absent physical injury or impact, *Gefter* at 251.

Turning to the matter at hand, it is clear there was no physical impact or injury, and the deposition testimony of the Plaintiff does not provide enough to infer that any alleged mental suffering occurred as a result of the incident. Even if this Court were to apply Section 353 of the Restatement as strictly authoritative, the claim must fail.

Mary Ann Panaway stated in her deposition that she called her doctor on the Monday following the incident. She said she was diagnosed with "anxiety, stress." When asked if she had already been diagnosed with anxiety before the incident, she replied "Not really," though she also stated that she believes she was prescribed Celexa before the incident. Defendant's Exhibit D; Pages 40-41. She then stated she takes Xanax as well, but could not recall whether she was prescribed Xanax in September of 2017. She then went on to explain that the incident "wasn't good" for her and her husband's pre-existing conditions, namely her diabetes and Mr. Panaway's diabetes and cancer. Additionally, Mrs. Panaway was asked whether the incident resulted in any type of limitations in life, as well as whether it affected her relationship with her husband. She

---

[5] Additionally, *Speck* was not a breach of contract action.

said no to both of those questions. Mrs. Panaway also stated that her husband never sought treatment related to this incident. Finally, when asked what treatment the Doctor recommended to her after this incident, Mrs. Panaway replied "Nothing, really." Defendant's Exhibit D; Page 41.

Typically, "testimonial affidavits and oral depositions of the moving party, without supporting documents, are insufficient to support a motion for summary judgment." *Kniaz v. Benton Borough*, 164 Pa.Cmwlth. 109, 642 A.2d 551 (1994). Nonetheless, "[t]he *Nanty–Glo* rule does not preclude the grant of summary judgment when the moving party relies on the testimonial evidence of an adverse party." *Id. Sanchez-Guardiola v. City of Philadelphia*, 87 A.3d 934, 938 (Pa. Commw. Ct. 2014) citing *Kniaz v. Benton Borough*.

Here, the Defendant relies on the testimony of Mrs. Panaway in seeking summary judgment. In taking Mrs. Panaway's statements as true, she does not indicate that she was diagnosed and treated because of the incident. Nor was she able to state with any certainty that any treatment even took place *after* the incident in general. The record is void of any medical documentation, as well as any expert reports explaining what alleged injuries occurred and whether they were a result of the incident. While all inferences must be taken in a light most favorable to the Plaintiffs in this matter, this Court cannot reasonably discern exactly what harm took place, nor whether it was a result of the incident.

It is well-settled that this Court is not to supplant the role of a Jury. However, "A plaintiff cannot survive summary judgment when mere speculation would be required for the jury to find in plaintiff's favor." *Krauss v. Trane U.S. Inc.*, 104 A.3d 556, 568 (Pa.Super. 2014). Even assuming there was a breach of contract that fits an exception under Section 353 of the Restatement, there can be no reasonable inference that Plaintiffs suffered damages as a result.

Due to the reasons stated above, mere speculation would be required for a jury to find in plaintiff's favor. With all inferences drawn in favor of the Plaintiff, a breach of contract claim cannot be sustained. Plaintiffs' claim must be dismissed as a matter of law.

**[END OF OPINION]**

The Prothonotary is directed to enter this Opinion of record, and mail a copy to all counsel of record, pursuant to Pa. R.C.P 236.

The Prothonotary is further directed to immediately transmit this Opinion and the entire record to the Superior Court.

BY THE COURT:

_____
RICHARD M. HUGHES, III, J.

Cc:
Robert T. Panowicz, Esquire
Joseph C. Thomas, Esquire
8 West Market Street, Suite 1100
Wilkes-Barre, PA 18701

Michelle B. Cappuccio, Esquire
Tracey McDevitt Hagan, Esquire
3 Executive Campus, Suite 310
Cherry Hill, New Jersey 08002